IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CHARLOTTE ALTMAN,<br><br>Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>Defendant. | CIVIL ACTION 4:04-22293-PMD-TER<br><br><br><br><br>REPORT AND RECOMMENDATION |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.)

## I. PROCEDURAL HISTORY

The plaintiff, Charlotte Altman, filed applications for Disability Insurance Benefits on October 18, 1999 (Tr. 144-146), alleging inability to work since August 27, 1999, due to severe headaches, neck pain and back pain (Tr. 166). Her applications were denied initially (Tr. 95-97), and upon reconsideration (100-102). Pursuant to plaintiff's request, a hearing de novo before an Administrative Law Judge (ALJ), Frederick W. Christian, was held on December 4, 2000, at which plaintiff and her

legal counsel, Ronald J. Jebaily, appeared, as well as, Robert Brabham, a qualified vocational expert (Tr. 85). The ALJ issued a decision on July 24, 2001, finding that Ms. Altman had concussion syndrome, degenerative disc disease, and depression, all of which were "severe" but found that plaintiff was able to do other work even though she could not perform her past relevant work, thus, not disabled within the meaning of the Act. On August 30, 2002, the Appeals Council vacated that decision and ordered a remand. The Appeals Council ordered that further consideration was directed to several specific exhibits not referred to in the decision. If controlling weight was not given to certain treating source opinions, the sources were to be recontacted for clarification and further consideration was to be given to plaintiff's symptoms, residual capacity and onset date. Upon remand, a supplemental hearing was held on April 22, 2003, at which plaintiff and her legal counsel appeared, as well as a Vocational Expert, Carroll Crawford. (Tr. 41-79). The ALJ, Judge Christian, issued a decision on August 28, 2003, that plaintiff was not disabled within the meaning of the Act prior to February 28, 2003 (Tr. 20-26). The Appeals Council denied plaintiff's request for review of the hearing decision on August 10, 2004 (Tr. 8-10). The decision of the ALJ therefore became the final decision of the Commissioner. Plaintiff sought judicial review in a Complaint filed on September 21, 2004, pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g).

## II. FACTUAL BACKGROUND

The plaintiff, Charlotte Altman, was born April 24, 1964, and was 38 years of age as of February 27, 2003, the date through which she was found not disabled (Tr. 144). She has a twelfth grade education and past work experience as a secretary, a truck and van shop assistant, and a television station traffic assistant (Tr. 168, 175, 186, 251, 256, 265, 278).

## III. DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

(1) The Commissioner's decision improperly discounts plaintiff's pain and limitations without applying the proper legal standard, without sufficient justification in law and fact, and without considering material and probative evidence.

(2) The vocational testimony does not meet the Commissioner's burden of proof but instead establishes disability.

(3) The claim should be awarded; remand for further development is requested only in the alternative.

In the decision of August 28, 2003, the ALJ found the following:

1. The claimant has not engaged in substantial activity since August 27, 1999.

2. The medical evidence establishes that the claimant has the following severe impairments: concussion syndrome, degenerative disc disease, bilateral mastectomies and depression.

3. The claimant has no impairment that meets or equals the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's assertions concerning her ability to work are credible as of February 28, 2003.

5. From August 27, 1999, until February 28, 2003, the claimant retained the residual functional capacity to perform a reduced range of light work.

6. As of February 28, 2003, the claimant retains the residual functional capacity to lift no more than 5 pounds, sit/stand at the work station every 20-30 minutes; she is further restricted to no work around heights or hazardous machinery, no climbing or balancing and no operation of automotive

equipment. She is also restricted to no repetitive constant or frequent pushing/pulling with her extremities and no overhead reaching. In addition, she must work in a low stress environment with no public contact.

7. The claimant is unable to perform the requirements of her past relevant work.

8. The claimant is a younger individual with a high school education.

9. The claimant has a skilled and semi-skilled work background and transferability of skills is not an issue.

10. Based on an exertional capacity for a reduced range of light work from August 27, 1999, until February 28, 2003, using Medical-Vocational Rules 202.21 and 202.22 as a framework for decision-making, there are a significant number of jobs in the economy that the claimant was capable of performing. Examples of such jobs were office helper with 2,400 jobs in the State and 168,000 in the national economy and the job of mall clerk with 1,600 jobs in the State and 112,000 in the national economy.

11. As of February 28, 2003,considering additional limitations, her age, education and vocational background, she cannot make an adjustment to any work that exists in significant numbers in the economy and, she is disabled.

12. Therefore from August 27, 1999 until February 27, 2003, the claimant was not entitled to a period of disability and disability insurance benefits.

13. The claimant has been under a disability, as defined in the Social Security Act, since February 28, 2003, but not prior thereto (20 CFR §404.1520(f)).

(Tr. 16-26).

## IV. MEDICALS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case. The medical records as set out by the defendant have not been seriously disputed by the plaintiff. Therefore, the undisputed medical evidence as stated by the defendant is set forth herein.

Plaintiff has a history of sustaining a head injury on January 11, 1999, while on a cruise which she was awarded from her company. At that time, a head and neck computerized tomography (CT) scan was normal, revealing patent neural foramen and the absence of bony abnormalities, fractures, dislocations, or hematomas(Tr. 286-294).

A cervical spine magnetic resonance imaging (MRI) on February 19, 1999, revealed discherniations at C5-6 and C6-7, with a mild C6-7 disc bulge with mild to moderate spinal stenosisand mild narrowing of both neural foramina, and less severe moderate C5-6 disc bulge orherniation with patent neural foramina and normal spinal canal (Tr. 285).

Plaintiff was examined by James J. Mady, Jr., Psy. D., on August 2, 9, 10, and 18, 1999 (Tr. 348-352). Plaintiff reported history of a head injury in January 1999, and complaints of headache, neck, shoulder, arm, and back pain, as well as fatigue, depression, and attention and concentration difficulties (Tr. 348-350). She also reported hot flashes, hand numbness and tingling, anxiety, dizziness, and heart pounding and racing. She further reported reading with difficulty (Tr. 348-352). An examination revealed a restricted affect (Tr. 351), and limited insight (Tr. 351), but also that Plaintiff was oriented in four spheres (Tr. 351), and that she demonstrated normal grooming(Tr. 351), the absence of thought or perceptual disorder (Tr. 351), adequate attention and concentration (Tr. 351), intact memory (Tr. 351), estimated low average intelligence (Tr. 351), and fair judgment (Tr. 351). Plaintiff reported a sad mood (Tr. 351), but denied suicidal ideation (Tr. 351). Dr. Mady

diagnosed major depression, an anxiety disorder due to pain, and posttraumatic stress disorder (PTSD), as well as reported neck pain and concussion (Tr. 347), and he concluded Plaintiff was "unstable emotionally" following her accident due to current life stress and pain (Tr.351).

Thereafter, Dr. Mady's records between August 20, 1999, and January 10, 2000, revealed treatment with individual counseling and biofeedback (Tr. 344-345, 482-501, 503). During this period, examinations revealed a restricted, sad affect (Tr. 344, 482, 486, 499), but also that Plaintiff was oriented in four spheres (Tr. 344), and that she demonstrated an intact memory(Tr. 344), and the absence of thought or perceptual disorder (Tr. 344). Plaintiff denied suicidal ideation (Tr. 344).

Dr. Mady concluded that depression interfered with Plaintiff's cognitive function, and that she was emotionally unstable, and he noted improvement with treatment (Tr. 345). He also noted in Plaintiff's report that she was unable to stay in one position more than 30 minutes, and that pain prevented her from pushing/pulling (Tr. 345).

Records of Walter J. Evans, M.D., a neurologist, between August 31, 1999, and October15, 2002, revealed treatment with medication for cervical disc herniation, lumbar spondylosis, cerebral concussion, borderline to mild sensory polyneuropathy of unclear etiology, and cervicallymphadenopathy, possibly of viral etiology (Tr. 358-360, 509-511, 514-515, 522-526, 543-544,552-553, 572-574). During this period, examinations revealed decreased cervical spine ranges of motion (Tr. 543, 574), cervical paraspinous muscle tenderness and spasm (Tr. 358, 360, 514,543-544), and a flat affect (Tr. 511), but also normal neurological functioning (Tr. 358), only mild left hand weakness (Tr. 574), an only slightly unstable walk and the ability to collect herself.(Tr. 511), only mild lymphadenopathy (Tr. 514, 524, 543), and the absence of hypereflexia or abnormal reflexes (Tr. 543).

A lumbar puncture and laboratory blood studies were negative (Tr. 552-553). A cervical spine MRI revealed disc herniations at C5-6 and C6-7, with disc degeneration and earlyosteophytic spur formation causing mild spinal canal stenosis and mild, left-sided neuralforaminal stenosis at both levels, which was slightly improved from previous studies, consistent with scarring and resolution of acute disc herniation (Tr. 542).

Plaintiff reported she packed, lifted, and unpacked boxes during a move, with pain(Tr. 525). She also reported pain relief with medication (Tr. 360, 522, 572), fever relief with pain medication (Tr. 524), and overall mood improvement (Tr. 514).

Records of F. Richard Ervin, M.D., between September 10 and 24, 1999, revealed treatment with medication for complaints of sleep difficulty, and assessment of lymphadenopathy and reported fevers (Tr. 477-481). During this period, examinations revealed unchanging cervical nodes, back muscle tenderness, and a depressed mood. Dr. Ervin concluded the stress of a recent marriage and Plaintiff's head injury caused a vague illness of unknown etiology(Tr. 481). He noted normal brain stem evoked potentials, visually evoked potentials, and electromyography (Tr. 479). He also noted Dr. Steadman's observation of the absence of fever in his office (Tr. 478). He further noted that subjective reporting of temperatures with failure to document on an outpatient basis was problematic, and that it was difficult to justify a hospital admission without objective documentation, and suggested Plaintiff record her temperature four to six times daily with two different thermometers, avoiding cold and hot meals, etc. (Tr. 477,480). He additionally noted that medication somewhat effective in treating Plaintiff's reported sleep difficulty (Tr. 480).

In a statement dated September 15, 1999, Plaintiff reported she took Serzone,[1] Lorcet (Vicodin),[2] Vioxx,[3] Zanaflex (tizanidine),[4] and Trazodone[5] (Tr. 174).

Plaintiff was examined on October 11, 1999, with complaints of fever and headache. Examination revealed that Plaintiff was alert, and that she demonstrated a temperature of 98.6 degrees, the ability to move her extremities, the ability to ambulate, and normal extremity sensory functioning. Plaintiff was not treated (Tr. 658-663).

Plaintiff was examined by Shashidhar Kori, M.D., on October 12, 1999, with complaints of neck pain, fatigue, recurrent fevers, and headaches without associated photophobia, nausea, or vomiting. Plaintiff reported taking Lorcet for pain. Dr. Kori took her off of Lorcet and placed her on OxyContin for the pain and recommended a spinal tap.(Tr. 517-519).

On October 26, 1999, Edward D. Walker, Ph.D., a State agency psychologist, determined that Plaintiff was not significantly limited in her abilities to remember locations and work-like procedures, understand, remember, and carry out short, simple instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday and workweek without

---

[1] An antidepressant medication. See Mosby's Drug Consult (15th ed. 2005) (Mosby's), available on Stat!Ref.Libary CD-ROM (First Qtr.2005).

[2] A pain medication for moderate to severe pain. See Mosby's.

[3] A nonsteroidal anti-inflammatory medication. See Mosby's.

[4] A muscle relaxant medication. See Mosby's.

[5] An antidepressant medication. See Mosby's.

interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others; and that she had moderate limitations in her abilities to understand, remember, and carry out detailed instructions, and maintain attention and concentration for extended periods (Tr. 431-432).

In a statement dated November 15, 1999, Plaintiff reported that she required occasional assistance in caring for her personal needs, and that she performed light household cleaning and other chores with difficulty, read a lot with difficulty, watched a lot of television with difficulty, operated a computer for brief periods, managed her own financial affairs, drove an automobile, shopped with assistance in heavy lifting, and attended church services. She also reported she took Zanaflex for sleep (Tr. 245-247).

Records of Thomas W. Phillips, M.D., between November 23, 1999, and February 24, 2003, revealed treatment for complaints of abdominal pain and a breast mass (Tr. 581-591). A bilateral mammogram and a left breast ultrasound revealed masses (Tr. 641-643).

In a statement dated January 14, 2000, Dr. James Evans, Clinical Associate Professor of Neurology at the Medical University of south Carolina stated Plaintiff was totally disabled and unable

to work due to cervical spondylosis, spinal stenosis, lumbar sprain, cerebral concussion, and depression (Tr. 516).

In a statement dated March 24, 2000, Dr. Evans again stated Plaintiff was totally disabled and unable to work due to cervical spondylosis with spinal stenosis, lumbar strain/sprain, cerebral concussion, and depression (Tr. 513).

In a statement dated April 7, 2000, Dr. Evans stated Plaintiff had findings consistent with the requirements of a vertebrogenic disorder listed in the Commissioner's regulations which are presumptive of disability (Tr. 353).

In a second statement dated April 7, 2000, Dr. Evans stated plaintiff had significant physical functional limitations (Tr. 354-357).

In a statement dated May 25, 2000, Dr. Evans stated Plaintiff was totally disabled and unable to work due to cervical spondylosis with spinal stenosis, lumbar strain/sprain, cerebral concussion, and depression (Tr. 512).

In a statement dated December 4, 2000, Plaintiff's friend stated Plaintiff was depressed and appeared to be in pain, and was occasionally able to perform light household cleaning and other chores (Tr. 235).

In a statement dated in December 2000, Plaintiff's spouse stated that Plaintiff was depressed and experienced persistent pain, and that she was occasionally able to care for her own personal needs, perform light household cleaning and other chores, and visit her mother occassionally but that she was a completely different person than he married. (Tr. 237).

In a statement dated in December 2000, Plaintiff's mother-in-law stated Plaintiff was depressed and experienced persistent pain (Tr. 238-239).

In a statement dated August 9, 2001, Dr. Evans stated Plaintiff was unable to work due to"neurological problems" (Tr. 521).

Plaintiff underwent a laparoscopy on November 28, 2001, due to pelvic pain, and was postoperatively diagnosed with pelvic adhesions and fibroids (Tr. 537-539).

In a statement dated February 22, 2002, Plaintiff reported she took Oxycontin and OxyIR,[6] "SULMA" (probably Soma (carisoprodol)),[7] Ambien,[8] and Zanaflex (Tr. 255).

In a statement dated March 8, 2002, Plaintiff reported that she required occasional assistance in caring for her personal needs, and that she performed limited household cleaning and other chores, cooked occasionally, read, watched television a lot, drove an automobile with difficulty, shopped with assistance in heavy lifting, went boating infrequently, visited others, and attended church services. She also reported she took Ambien and Zanaflex for sleep, which were effective (Tr. 273-275).

Plaintiff was hospitalized between February 26, and March 4, 2003. She underwent a bilateral biopsy, and a bilateral modified radical mastectomy on February28, 2003. (Tr. 728-733).

At her hearing on April 22, 2003, Plaintiff testified she continued to experience head, neck, pelvic, lower back, and extremity pain resulting from a head injury, for which she took medication. She also testified that since the ALJ's previous decision she had undergone a bilateral mastectomy and was currently undergoing chemotherapy. She further testified she continued to experience depression which was the same as prior to hermastectomy, for which she took medication but no longer

---

[6]A pain medication for moderate to moderately severe pain. See Mosby's.

[7]A muscle relaxant medication. See Mosby's.

[8]A sedative medication. See Mosby's.

underwent mental health treatment, but rather, only occasional counseling from her preacher (Tr. 49-62).

In a statement dated May 7, 2003, Dr. Evans stated Plaintiff had significant functional limitations between January 1999, and May 2003 (Tr. 744-746).

After considering all of the evidence, the ALJ found in his decision dated August 28, 2003, that Plaintiff had "severe" concussion syndrome, degenerative disc disease, status postbilateral mastectomies, and depression, but that she did not have an impairment or a combination of impairments listed in or medically equal to one listed in 20 C.F.R. pt. 404, subpt. P, app. 1. He also found that Plaintiff's subjective complaints as of February 27, 2003, were not credible to the extent alleged (Tr. 25). He further found that, as of February 27, 2003, Plaintiff retained the RFC to perform light work reduced by limitations from walking more than four hours daily or performing more than routine and repetitive tasks involving simple one to two-step instructions, repetitive constant or frequent upper extremity pushing or pulling, or any over headwork or public contact, and by limitations to work allowing a low stress environment and alternate sitting and standing every two hours (Tr. 22, 25). Therefore, plaintiff was found disabled as of February 28, 2003, but not prior thereto (Tr. 25-26).

## V. TESTIMONY

Plaintiff asserts that before she became disabled, she had a good work record. While still in high school, plaintiff states that she began working at a TV station where she continued to work for 17 years. When the station downsized, plaintiff asserts that she briefly worked at a data systems company and then got a good job with a mortgage company making $30,000.00 per year. Plaintiff asserts that it is clear to see that she was a highly motivated worker until she was injured on a cruise

she won at her job at the mortgage company in 1999. On January 10, 1999, plaintiff states that while on the cruise ship, an upper-level bunk unfolded, fell from the wall, and hit her head and neck, and knocked her unconscious. Plaintiff asserts that when her pain did not resolve, the mortgage company had to let her go. Plaintiff asserts that she tried to work briefly in another job but failed. Plaintiff asserts that she was diagnosed with a disc injury in the spine, just below her skull, and a cerebral concussion and was diagnosed with polyneuropathies and lymphadenopathy related to Epstein-Barr virus. (Tr. 48, 49, 68, 148, 168, 168).

Further, plaintiff testified that she has severe pain in her head, neck, upper back, arms, lower back, and legs along with constant headaches and neck pain. Plaintiff testified to limited use of her hands and arms and that she suffers with severe depression and anxiety. Plaintiff testified that she can stand or walk for only 30 minutes at a time and sit for 20 minutes, has to lie down one to three times per day for 30 minutes to two hours, had difficulty turning her head, has trouble sleeping, and is only able to do very limited housework with her husband's help. Plaintiff testified that her husband helps to bathe and dress her and she sometimes sits and cries. (Tr. 49-67).

## VI. ARGUMENTS

First, plaintiff argues that the Commissioner's decision improperly discounts plaintiff's pain and limitations without applying the proper legal standard, without sufficient justification in law and fact, and without considering material and probative evidence. Plaintiff asserts that the decision is inconsistent. Plaintiff argues that "It (the decision) specifically finds that Ms. Altman has 'severe' concussion syndrome, which is entirely consistent with her complaints of debilitating headaches and mental impairment. The omission of any discussion of the sequelae of the head injury is striking.

More striking is the omission all together of any discussion of pain associated with degenerative disc disease, also found to exist, and found to be 'severe.'" (Memorandum p. 7). Plaintiff asserts that the ALJ ignored Dr. Evans' opinion and determination that plaintiff's complaints are consistent with her impairments. Plaintiff submits that there are no qualified medical sources saying otherwise and the decision errs in finding no impairment that could produce her symptoms. Plaintiff argues that the decision erred in rejecting the diagnosis of chronic fatigue syndrome and Epstein-Barr virus when it misstates the medical record that there was "no evidence" of Epstein-Barr. Plaintiff argues that there is clear evidence based on Dr. Healy's and Dr. Ervin's evaluations and notes. Plaintiff argues that the medical opinions that the ALJ discounted are supported by clear rationales, by longstanding clinical relationship, by numerous objective findings of impairment, and by testimony of plaintiff and others.

In defendant's memorandum in support of the Commissioner's decision, she argues that the ALJ expressly discussed Dr. Evans' RFC assessment, and cited evidence contradicting that assessment, expressly discussed Dr. Mady's assessment that plaintiff was disabled, and correctly noted the absence of clinical findings to support that conclusion, including the absence of any finding of impaired memory or concentration. Defendant asserts that plaintiff acknowledges that the ALJ recontacted the physicians as the Appeals Council directed and the ALJ's decision is supported by substantial evidence.

As stated above, plaintiff's first argument is that the ALJ did not properly assess her credibility as to pain. In assessing complaints of pain, disability, and limited function the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain [disability and limited function] alleged by a plaintiff and, if such

evidence exists, (2) consider a plaintiff's subjective complaints of pain, [disability and limited function] along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). A claimant's allegations of pain, disability and limited function itself or its severity need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges she suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

As to allegations of pain, the Fourth Circuit has often repeated that, "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain, such as heat, swelling, redness and effusion." Craig, 76 F.3d at 592 (identifying two-step process by which ALJ must first determine if the claimant has demonstrated by objective medical evidence an impairment capable of causing the pain alleged and if so, must then assess the credibility of the claimant's subjective accounts of pain); Jenkins v. Sullivan, 906 F.2d 107, 109 (4th Cir. 1990).

The Commissioner has promulgated Ruling 96-7p to assist ALJ's in determining when credibility findings about pain and functional effect must be entered, and what factors are to be weighed in assessing credibility. The Ruling directs that,

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability

> to do basic work activities. *This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.*
>
> . . .
>
> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
>
> . . .
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

Ruling 96-7p (emphasis added).

An ALJ's duty to make credibility findings about the plaintiff's statements about pain in a mental impairment case is just as important as in one alleging a physical impairment. See, e.g., Snell v. Apfel, 177 F.3d 128 (2d Cir. 1999). A reviewing court cannot determine if findings are supported by substantial evidence unless the Commissioner explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (remand required based on failure to indicate weight given to medical reports). The Fourth Circuit has recognized that it is

especially critical that the ALJ assess a plaintiff's credibility as to accounts of pain. As the court stated in Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989) (citations omitted):

> [i]t is well settled that: '[t]he ALJ is required to make credibility determinations--and therefore sometimes make negative determinations--about allegations of pain or other nonexertional disabilities . . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process.

Further, a treating physician's opinion is to be given substantial weight. The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with the other evidence in the record. 20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.); Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983)(a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."). Conversely, if a physician's opinion is not supported by medically-accepted clinical and laboratory diagnostic techniques and is not consistent with the other evidence in the record, it will not be given controlling weight. In evaluating how much weight should be given to the opinion of a physician, the nature and extent of the treatment relationship will be taken into account. Id. An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

A review of the hearing decision reveals that the ALJ found the following:

> Chronic fatigue syndrome and Epstein-Barr virus have also been alleged by the claimant. Records from Dr. Mark Steadman on July 23, 1999, showed that the claimant had some viral syndrome; however, his records and records from Duke Hospital had shown that there was no evidence of Epstein-Barr virus. Records from Dr. F. Richard Ervin showed that clinical and laboratory findings were negative for Epstein-Barr virus.
>
> This is a very difficult case because of the chronic and persistence nature of the claimant's complaints. Pain is very subjective and is not easily susceptible to objective proof. However, law and regulations still require objective evidence of an impairment which could cause pain of severity alleged. Here, the evidence shows no significant physical impairment which would produce subjective symptoms described by the claimant. That would suggest a mental impairment as a cause. But treating physicians have not diagnosed a somatoform disorder, but concentration that would preclude unskilled work. Both Drs. Windosorova and Mady saw problems with complex and detailed tasks, but no difficulty with simple tasks.

Further, the ALJ concluded that:

> The claimant testified at the hearing in April 2003, that she had pain in her head, neck and lower back and pain across her shoulders with tingling and numbness in hands and arms. She stated that she can pick up small things, but it hurts. She stated that her arms are weaker. She testified that she is unable to do any prolonged standing and walking. She also testified to a recent diagnosis of cancer and subsequent bilateral mastectomies and currently is receiving chemotherapy. She stated that the chemotherapy makes her extremely sick and nauseated and she cannot get out of bed for days at a time. The claimant further testified that when she can, she washes dishes, feeds the dogs, wash and dries clothes (her husband must put wet clothes into the dryer and she folds the dried clothes); can sweep the floor (just the kitchen) and that her husband does all the vacuuming and yard work. She stated that she cries and gets down a lot due to depression. The claimant testified that her pain is aggravated by cold weather, overhead reaching and some pushing and pulling. She stated that she could lift and carry 5 pounds, stand and walk 30 to 60 minutes and sit for 20 minutes. She stated that [she] lies down 2-3 times a day for 30 minutes to 2 hours.
>
> After considering all of the evidence, I find that until February 28, 2003, the claimant retained the residual functional capacity to lift and

> carry 20 pounds occasionally and 10 pounds frequently; sit up to 4 hours a day; stand and walk up to 4 hours a day; alternately sit and stand at the work station every 2 hours; no repetitive constant or frequent pushing or pulling with upper extremities and no overhead work. Further, she was restricted to routine and repetitive tasks involving simple one to two step instructions; low stress environment no public contact.

.
(Tr. 22-23).

First, the ALJ found that plaintiff has degenerative disc disease which is severe but does not give any discussion as to pain associated with this disease. Plaintiff testified that she has pain in her neck and lower back and pain across her shoulders with tingling and numbness in her hands and arms. Further, plaintiff testified that her arms are weaker and she is unable to do any prolonged standing and walking. The ALJ also found that she has concussion syndrome which is severe but discounted her allegations of head pain. Plaintiff testified that her pain is aggravated by cold weather, overhead reaching and some pushing and pulling. Plaintiff testified that she could lift and carry 5 pounds, stand and walk 30 to 60 minutes and sit for 20 minutes but that she has to lie down 2-3 times a day for 30 minutes to 2 hours. The ALJ discounted these complaints.

Dr. Evans, plaintiff's treating neurologist, opined that plaintiff's complaints are consistent with C6-7 disc herniation with severe disc degeneration and spondylosis. (Tr. 356). Dr. Evans also stated in a questionnaire that plaintiff had herniated nucleas pulposus, spinal stenosis, muscle spasms, and significantly diminished ranges of motion. (Tr. 353). Therefore, the treating neurologist found that plaintiff's complaints were consistent with her impairments. Thus, the ALJ discounted plaintiff's complaints of pain when the treating physician's opinions supported her complaints and there was no neurologist or specialist source saying differently. The only explanation the ALJ appeared to give for discounting plaintiff's complaints of pain was the following statement:

> . . . she has numerous physical complaints, few, if any, of which can be substantiated medically. Numerous evaluations by specialists and diagnostic studies have failed to show any significant demonstrable musculoskeletal or neurological deficits.

(Tr. 21).

Further, the ALJ concluded the following in his decision with regards to plaintiff's mental problems:

> The claimant is, however, in her former treating psychiatrist's words, "emotionally unstable." Although, Dr. Mady stated that she was disabled, a careful review of his treatment notes showed only that she cries easily. There were no clinical findings by him of impaired memory or concentration during his examinations, only self-reports form the claimant. The claimant's appearance and demeanor at the previous hearing were consistent with this in that she cried during the hearing, but was able to follow and answer questions and demonstrated no significant memory difficulties.

(Tr. 21).

However, Dr. Mady opined the following in his report:

> . . . Mrs. Altman suffers with constant daily headaches of the mixed variety, primarily muscular. Multidimensional Pain Inventory classification is dysfunctional. Her scores indicate that compared to other chronic pain patients she is experiencing more interference in her life due to the pain and experiencing less feeling of control over her life. The scores also indicate reduced activity including household chores, outdoor work, activities away form home, and social activities. The scores indicate that she is receiving appropriate response from her husband as to her pain. Projective instruments indicate that this is a very religious woman with a great deal of faith in God. At this time, she feels inadequate, sad, and covered with pain . . .

(Tr. 506).

Dr. Mady found that plaintiff is depressed over the loss of her health and ability to function.

As previously stated, Dr. Ervin stated that claimant does have a disc herniation with severe disc degeneration and spondylosis which are the conditions that can produce the kind of pain reported by plaintiff. (Tr. 356). Dr. Ervin stated that he has been doing monthly examinations on plaintiff since February 24, 1999. As stated above, the ALJ found that plaintiff has severe degenerative disc disease. (Tr. 21). Further, upon remand, Dr. Ervin was sent a form to complete in which he still stated that the limitations of plaintiff are normally expected from the type and severity of her diagnosis and that the diagnosis was confirmed by objective findings not based on plaintiff's subjective complaints. (Tr. 744-746). On August 9, 2001, Dr. Evans again opined that plaintiff was unable to do any type of work due to her neurological problems which also require daily mediation. In the form submitted by the ALJ prior to the second hearing, Dr. Ervin stated that plaintiff's disc herniation and degeneration and spondylosis are confirmed by MRI scans. He opined that plaintiff could not stand or walk for more than 2-4 ours total with interruption, that she could sit for a total of 2-4 hours with interruption, and that she could never climb, stoop, crouch, kneel, or crawl. Dr. Ervin stated that plaintiff's chronic pain required chronic medication. The ALJ concluded that "I do not find basis to support the claimant's treating physician's limitations of missing 2-3 days a week due to pain. That appears to be a subjective complaint, rather than a medical finding." (Tr. 23). The ALJ does not cite to any objective contradictory evidence to justify discounting the physician's opinion when the treating specialist stated that his results were based on objective testing and not plaintiff's subjective complaints.

Based on the evidence, the undersigned finds that the ALJ did not properly consider the plaintiff's subjective complaints of pain and did not give specific reasons for rejecting her testimony based on the evidence and failed to give the proper weight to her treating physicians' opinions.

## VII. CONCLUSION

The plaintiff is seeking disability payments for the period from August 27, 1999, to February 27, 2003. For the reasons stated, the undersigned finds that substantial evidence does not support the Commissioner's finding that plaintiff was not disabled prior to February 28, 2003. It is therefore,

Recommended, for the foregoing reasons, that the Commissioner's denial of benefits should be REVERSED, and that the plaintiff receive benefits for the period from August 27, 1999, until February 27, 2003.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 3, 2006
Florence, South Carolina