**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| CHARLOTTE ALTMAN, ) | |
|          Plaintiff, ) | |
| ) | |
| v. ) | C.A. No.: 4:04-22293-PMD-TER |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | **ORDER** |
| of Social Security, ) | |
|          Defendant. ) | |
| _____) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, codified at 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision, which denied Charlotte Alman's ("Altman") claim for Disability Insurance Benefits ("DIB") for the period of August 27, 1999, to February 28, 2003. The record includes a Report and Recommendation ("R & R") of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a), recommending that the Commissioner's final decision be reversed and remanded for an award of benefits. The Commissioner timely objected to the Magistrate Judge's recommendation. *See* 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to a Magistrate Judge's R & R within ten days after being served with a copy).

**BACKGROUND**

The plaintiff, Charlotte Altman, filed applications for DIB on October 18, 1999, alleging inability to work since August 27, 1999, due to severe headaches, neck pain, back pain, and depression caused by disc herniations, concussion syndrome, and spondylosis.[1] Her applications were denied initially, and upon reconsideration. Pursuant to Altman's request, a hearing *de novo*

---

[1] The R & R includes a thorough and uncontested account of Altman's medical history which the court incorporates into this order.

before an Administrative Law Judge ("ALJ"), Frederick W. Christian, was held on December 4, 2000, at which Altman and her legal counsel, Ronald J. Jebailey, appeared, as well as Robert Brabham, a qualified vocational expert ("VE"). The ALJ issued a decision on July 24, 2001, finding Altman had concussion syndrome, degenerative disc disease, and depression, all of which were "severe" but found that, although unable to perform past relevant work, Altman was able to perform other work and was therefore not disabled within the meaning of the Act. On August 30, 2002, the Appeals Council vacated that decision and ordered a remand. The Appeals Council ordered that further consideration was to be given to several specific exhibits not referred to by the ALJ in his decision. If controlling weight was not given to certain treating source opinions, the sources were to be recontacted for clarification and further consideration was to be given to Altman's symptoms, residual capacity, and onset date. Upon remand, a supplemental hearing was held on April 22, 2003, at which Altman and her legal council appeared, as well as a VE, Carroll Crawford. The ALJ, Judge Christian, issued a decision on August 28, 2003, that Altman was not disabled within the meaning of the Act prior to February 28, 2003.[2] The Appeals Council denied Altman's request for review of the hearing decision on August 10, 2004, at which point the decision of the ALJ became the final decision of the Commissioner. Altman sought judicial review in a Complaint filed on September 21, 2004, pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g).

## DISCUSSION

**I.      Magistrate Judge's R & R**

The Magistrate Judge makes only a recommendation to the court. The recommendation has

---

[2] Upon this date, Altman underwent a bilateral biopsy, and a bilateral modified radical mastectomy. Altman underwent chemotherapy following this surgery.

no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). The court reviews *de novo* those portions of the R&R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). Courts have held *de novo* review to be unnecessary when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations. *See, e.g.*, *United States v. Mertz*, 376 U.S. 192 (1964); *Howard v. Secretary*, 932 F.2d 505, 508-09 (6th Cir. 1991); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)*; Pendleton v. Rumsfeld*, 628 F.2d 102 (D.C. Cir. 1980).

The court has reviewed the entire record, including the R&R and the Commissioner's objections. Pursuant to this review, the court concludes that the Magistrate accurately detailed the facts at issue and applied the correct principles of law. Accordingly, the court adopts the R&R in full and incorporates it in full into this Order.

## II.     Standard of Review

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be

>    somewhat less than a preponderance. If there is evidence to justify a refusal to direct
>    a verdict were the case before a jury, then there is 'substantial evidence.'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

### III.    Commissioner's Final Decision

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:

>    [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so, the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work.

*Mastro*, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed to the

next step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993).  The burden of production and proof remains with the claimant through the fourth step.  However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that a claimant could perform, considering the claimant's medical condition, functional limitations, age, education, and work experience. *See Walls*, 296 F.3d at 290.

Applying this framework, the ALJ found (1) that Altman met the disability insured status requirements, (2) that she has not engaged in substantial gainful activity since August 27, 1999, (3) that her impairments, including concussion syndrome, degenerative disc disease, bilateral mastectomies and depression, are severe but do not meet or equal a listing impairment, (4) that, from August 27, 1999 to February 28, 2003, she retained the residual functional capacity to perform limited light exertional work with certain restrictions, and (5) that claimant has been under a disability, as defined in the Social Security Act, since February 28, 2003, but not prior thereto.

**IV.   Analysis**

The Magistrate found that the ALJ erred (1) by making an improper credibility analysis of Altman's pain, and (2) by failing to give appropriate weight to the testimony of Altman's treating physicians, Drs. Walter J. Evans, M/D., a neurologist, and James J. Mady, Psy.D.  The Magistrate therefore recommended reversing the ALJ's denial of benefits.  The Commissioner objects to each of these conclusions,[3] and also objects to the Magistrate's recommendation that benefits be awarded

---

[3] The court notes that these objections do not point to specific errors of law or fact in the R & R, but only repeats arguments in Defendant's original brief that were made to, and rejected by, the Magistrate.  *See, e.g., Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F.Supp. 380, 382 (W.D.N.Y.1992) ("It is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a

rather than remanding for further consideration by the ALJ.

**1.     The Commissioner objects that the ALJ did properly credit Altman's subjective claims of pain.**

Though a subjective allegation of pain, standing alone, "shall not be conclusive evidence of disability," where the claimant proves the existence of a medical condition that could cause pain, the claimant's subjective complaints must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective evidence. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994) (quoting 42 U.S.C. § 423(d)(5)(A)).

In this case, Dr. Evans reported on April 7, 2000, that Altman's injuries, disc herniation with severe disc degeneration and spondylosis, are of the nature and type that can produce significant pain. (Tr. 356.) He further stated that, due to this pain, Altman could not stand or walk for more than 2-4 hours total with interruption, that she could not sit for a total of 2-4 hours with interruption, that she could never climb, stoop, crouch, kneel, or crawl, and that she could miss 2-3 days a week due to pain and illness. (Tr. 356.) Further, Dr. Mady, a psychologist, opined in his report that "Altman suffers with constant daily headaches of the mixed variety, primarily muscular. Her scores indicate that compared to other chronic pain patients she is experiencing more interference in her life due to pain and experiencing less feeling of control over her life." (Tr. 506.)

Despite this evidence of relevant medical conditions, the ALJ discredited Plaintiff's claims of severe neck and back pain finding that "the evidence shows no significant physical impairment which would produce subjective symptoms described by the claimant." (Tr. 22.) The Magistrate

---

district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge."). Nonetheless, the court considers each objection and reviews the relevant record *de novo*.

found that this failure to credit medically supported claims of pain was error.

The Commissioner claims that the ALJ's discounting of Altman's subjective claims of pain was proper because inconsistencies in her testimony reduced Altman's credibility as a witness. For example, the Commissioner points out that Altman testified that, prior to February 28, 2003, she was able to perform some light housework[4] and that, despite ranking her headache pain as a 10, she never sought in-patient hospitalization. As such, the Commissioner argues that the ALJ properly considered inconsistencies between Altman's testimony and other evidence of record in evaluating the credibility of her claims of pain.

The court does not agree. The ALJ's determination is contrary to the Fourth Circuit's clear instructions, time and time again, that a claimant "need only show objective medical evidence of some condition that could reasonably be expected to produce the pain alleged, not objective medical evidence of the pain itself." *Thompson v. Sullivan,* 980 F.2d 280, 282 (4th Cir. 1992) (quoting *Jenkins v. Sullivan*, 906 F.2d 107, 109 (4th Cir. 1990); *see also Myers v. Califano,* 611 F.2d 980, 983 (4th Cir. 1980); *Foster v. Heckler,* 780 F.2d 1125, 1129 (4th Cir. 1986); *Walker v. Bowen,* 889 F.2d 47, 49 (4th Cir. 1989). Indeed, the Fourth Circuit has expressly, and repeatedly, rejected a rule which would require the claimant to demonstrate evidence of the actual existence of the alleged pain. *Shrewsbury v. Chater*, 68 F.3d 461 (4th Cir. 1995). Further, although credibility

---

[4] Specifically, Altman testified that she cared for her own personal needs with only occasional assistance, performed some light household chores, cooked occasionally, read a lot, watched television a lot, operated a computer, managed her own financial affairs, ran errands, drove an automobile, shopped, went boating occasionally, visited others, and attended church services. As well as noting that none of these listed activities are more than minimally taxing physically, the court also notes that the ALJ, in his report, failed to make any determination regarding how and to what extent Altman's ability to perform these tasks affects the credibility of her claims of subjective pain.

determinations are generally left to the ALJ's discretion, such determinations should not be sustained if the ALJ failed satisfactorily to explain the basis on which he refused to accord any weight to a claimant's complaints of pain. *Id.* As the Fourth Circuit explained,

> [t]he ALJ is required to make credibility determinations - and therefore sometimes make negative determinations - about allegations of pain or other nonexertional disabilities. . . But such decisions should refer specifically to the evidence informing the ALJ's conclusions. This duty of explanation is always an important aspect of the administrative charge,. . . and it is especially crucial in evaluating pain.

*Hatcher v. Secretary*, 898 F.2d 21, 23 (4th Cir. 1989).

In this case, the ALJ made no such credibility determination. He merely finds that there is no "basis to support the claimant's treating physician's limitation of missing 2-3 days a week due to pain," and accordingly disregards Altman's claimed limitations due to pain. As such, the court adopts the Magistrate's recommendation that the reasons for discrediting Plaintiff's subjective pain are not adequately supported by substantial evidence in the record.

**2.    The Commissioner objects that the ALJ did give appropriate weight to the testimony of Drs. Walter J. Evans and James J. Mady.**

Objective medical facts and the opinions and diagnoses of the treating and examining doctors constitute a major part of the proof to be considered in a disability case and may not be discounted by the ALJ. *See, e.g., Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (holding that treating physician's opinion is entitled to great weight if not contradicted by persuasive evidence); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1987) (stating that the treating physician's opinion is "entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time" and should be disregarded "only if there is persuasive contradictory evidence"). When evaluating the opinion of a treating physician, the ALJ must consider whether the opinion should be given controlling weight. *See* 20 C.F.R. §

404.1527(d)(2). Controlling weight is afforded where the opinion (1) is from a treating source; (2) is a medical opinion concerning the nature and severity of the plaintiff's impairment; and (3) is well-supported by medically acceptable clinical and laboratory diagnostic techniques. *See* S.S.R. 96-2p; 20 C.F.R. § 416.927 (emphasis added). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater,* 76 F.3d 585, 590 (4th Cir. 1996); *see also Hunter,* 993 F.2d at 35 (noting that "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

As has already been discussed above, in this case, Dr. Evans, who examined Altman on a monthly basis starting on February 24, 1999, stated on April 7, 2000, that Altman has a disc herniation with severe disc degeneration and spondylosis which can produce the kind of pain she reports. (Tr. 356.) The disc herniation and degeneration and spondylosis were confirmed by MRI scans. (Tr. 744-46.) He reported that Altman could not stand or walk for more than 2-4 hours total with interruption, that she could not sit for a total of 2-4 hours with interruption, and that she could never climb, stoop, crouch, kneel, or crawl. Dr. Mady, a psychologist, reported in November of 1999 that "Altman suffers with constant daily headaches of the mixed variety, primarily muscular. . . [and that] she is experiencing more interference in her life due to pain and experiencing less feeling of control over her life." (Tr. 506.) Because of these problems, Dr. Mady opined in January of 2000, that "Ms. Altman is not able to stay in one position for [greater than] 30 minutes. . .Depression interferes with [her] cognitive function - easily becomes emotionally unstable." (Tr. 346.)

The Commissioner argues that the ALJ properly discredited Drs. Evans and Mady's opinions

because "even a treating source's opinion regarding a claimant's impairments can be discounted if it is not well supported by medically acceptable clinical and laboratory diagnostic techniques and is not consistent with other substantial evidence in the record." (Objections at 3, citing *Craig*, 76 F.3d at 590.) The Commissioner states that Dr. Evans' opinion was inconsistent with his own findings of normal neurological functioning, only mild left hand weakness, an only slightly unstable walk, and only mild lymphadenopathy. Similarly, the Commissioner argues that Dr. Mady's opinion is inconsistent with his own findings that Altman was oriented in four spheres, demonstrated normal grooming, had no thought or perceptual disorder, adequate attention and concentration, intact memory, and denied having suicidal thoughts. Further, the Commissioner notes that the opinions of Drs. Evans and Mady are inconsistent with the conclusions of other treating, examining, and non-examining physicians of record.[5] As such, the Commissioner argues that the ALJ correctly gave little weight to the treating physicians' opinions regarding the severity of Altman's limitations. This court does not agree.

First, the court finds that the opinions of Drs. Evans and Mady are not inconsistent so as to justify discrediting them. Dr. Evans' findings, that the Commissioner cites as "inconsistent" with his opinion that Altman is unable to perform light work, are taken out of context and ultimately do not justify discounting his ultimate opinion. For example, in the report in which Dr. Evans finds that Altman has "some mild weakness in the left hand," he goes on to note that she suffers from a "significant reduction in range of motion with some spasm" and "still has problems with chronic

---

[5] The Commissioner cites the report of Shashidhar Kori, M.D., who conducted a neurological evaluation of Altman, that concluded that she demonstrated no evidence of acute neurological disease and that her symptoms were possibly related to Lorcet rebound and pending litigation.

-10-

fatigue and chronic pain, as well as memory loss, inattention, constipation." (Tr. 574.) Again, in the report in which Dr. Evans finds her lymphadenopathy to be "less prominent than in the past," he also notes that there is "still markedly reduced range of motion at the neck with spasm and tenderness throughout" due to "broad based disc herniation with mild spinal canal stenosis." (Tr. 543.) Similarly, while Dr. Mady acknowledges that Altman has "adequate attention and concentration" and was "meticulously dressed and groomed," he also found her to be "overwhelmed physically and emotionally" by feeling "inadequate, sad, and covered with pain." (Tr. 351.) These recognitions of positive aspects of Altman's condition, while always finding her limitations to be significant, cannot seriously be considered to be "inconsistent" with the treating physicians' ultimate determination that Altman's injuries and resulting pain severely limited her ability to function.

Second, the fact that other non-treating physicians came to varying conclusions regarding Altman's condition does not establish that Drs. Evans and Mady's opinions should be entirely discredited. To the extent there was a conflict between various physicians' opinions in the record, it was the ALJ's duty to weigh the evidence, resolve material conflicts, and decide the case accordingly; however, even where the treating physician's opinion is not entitled to "controlling weight" because it is inconsistent with the other substantial evidence in the case record, the treating physician's opinion should not be wholly rejected. A treating physician's opinion, even when contradicted by other evidence, is entitled to deference and must be weighed based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical questions at issue; and (6) other factors which tend to support or contradict the opinion. *See* 20 C.F.R. 416.927. Finally, the ALJ must always

*explain* the weight afforded a treating physician's opinion. *See Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987) (remanding a claim for disability benefits because the ALJ did not explain adequately why he credited one doctor's views over those of another doctor); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *see also* 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

In this case, the court finds that the ALJ wholly rejected Drs. Evans and Mady's testimonies after deciding not to give them controlling weight, rather than assessing, and explicitly stating, the amount of weight these opinions should be accorded pursuant to the factors set forth in 20 C.F.R. 416.927. Accordingly, the Magistrate correctly found that the ALJ's decision to discredit Drs. Evans and Mady's opinions was not supported by substantial evidence.

**3.    In the alternative, the Commissioner requests that, rather than remand for the payment of benefits, the court remand the case under sentence four of 42 U.S.C. 405(g), for further administrative proceedings, to allow the ALJ to properly assess Altman's credibility and the opinions of her treating physicians.**

Having found that the ALJ made errors of law in his decision in this case, the court may enter a judgment reversing the Commissioner's disability determination or remanding for further proceedings. *See* 42 U.S.C. § 405(g). The Commissioner has moved for judgment remanding the cause for further proceedings under sentence four of 42 U.S.C. § 405(g) because "[w]hen appropriate consideration is afforded the applicable law, regulations, and policies regarding this issue, the record does not overwhelmingly support a finding of disability during the period at issue." (Objections at 6.)

The court declines to remand this case for further proceedings. Plaintiff Altman produced sufficient evidence to show that she was unable to perform her past relevant work, and the

Commissioner failed after ample opportunity to present sufficient evidence to carry its burden of proving she could perform a significant number of jobs in the national economy. Her treating physicians, whose opinions are to be afforded great weight, have given opinions that she had no capacity to work as early as August 27, 1999. The court further notes that this matter has been before the ALJ twice already, and both times the ALJ was unable to appropriately articulate a sustainable justification for rejecting the treating physicians' testimony regarding Altman's pain and limitations due to proven impairments. Under these circumstances, there is sufficient evidence in the record to support a reversal of the Commissioner's disability finding, and no purpose would be served by remanding for further factual development. *See Batts v. Sullivan*, 818 F.Supp. 138, 141 (E.D.N.C. 1993).

## CONCLUSION

The Commissioner's finding of no disability is hereby **REVERSED**, and the Commissioner is directed to award Charlotte Altman security benefits for the period of August 28, 1999 through February 28, 2003, accordingly.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**February 27, 2006.**